## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| MATTHEW SMITH and AKILA RADHAKRISHNAN, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his official capacity as Secretary of the Treasury; U.S. DEPARTMENT OF JUSTICE; PAMELA BONDI, in her official capacity as Attorney General; OFFICE OF FOREIGN ASSETS CONTROL; and LISA M. PALLUCONI, in her official capacity as Acting Director of the Office of Foreign Assets Control, <br><br> Defendants. | Civil Case No.: 1:25-cv-00158-NT |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Defendants offer little justification for Executive Order 14203's broad restrictions on Americans' speech, including Plaintiffs'.[1] Instead, they provide strategically ambiguous assurances about how they may choose to enforce the Order. But these are not enough to stave off a constitutional reckoning.

First, Defendants state that "constitutionally protected speech is broadly exempt from" the Order's restrictions. Opp. 17. Yet tellingly, they do not acknowledge—let alone confirm with a relevant official's declaration or other evidence—that Plaintiffs' intended speech is exempt from the Order's prohibition on providing "services" to the Prosecutor. Nor do Defendants acknowledge that Plaintiffs' intended speech is constitutionally protected. Rather, Defendants insist that the Order does not violate the First Amendment because it places only an incidental, content-neutral burden on speech. They are incorrect. As Plaintiffs have shown, the Order bans speech based on content—that is, based on whether it has the function or purpose of providing a service to the Prosecutor. For this ban to pass constitutional muster, Defendants must establish that it is the least restrictive means of achieving a compelling governmental interest. Their Opposition fails to do so.

Second, Defendants emphasize that the Order "cannot," under IEEPA, "prohibit the transmission of 'information and informational materials.'" *Id.* at 19. Here too, Defendants do not clearly concede that IEEPA's exception for information and informational materials *applies to*

---

[1] Here, Executive Order 14203, 90 Fed. Reg. 9369 (Feb. 6, 2025), is also referred to as the "Order." "Opposition" refers to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction, ECF No. 23. "Motion" refers to Plaintiffs' Motion for Preliminary Injunction and Incorporated Memorandum of Law, ECF No. 19. "ICC" refers to the International Criminal Court. "OTP" refers to the International Criminal Court's Office of the Prosecutor. "Prosecutor" refers to Karim Khan, the chief prosecutor of the International Criminal Court and head of the Office of the Prosecutor. "IEEPA" refers to the International Emergency Economic Powers Act.

*Plaintiffs' speech*. And in any event, Defendants' arguments do not provide Plaintiffs with the binding legal protection to which they are entitled.

Against this backdrop, Plaintiffs' constitutionally protected human rights advocacy puts them at risk of civil and criminal penalties, and their need for declaratory and injunctive relief remains urgent.

## ARGUMENT

**I.   Plaintiffs are likely to succeed on the merits of their First Amendment claim.**

**A.  Strict scrutiny applies.**

In an effort to avoid strict scrutiny, Defendants assert that the Order "only incidentally burdens expression." Opp. 13. Not so. As applied to Plaintiffs, the very activity "triggering coverage" under the Order "consists of communicating a message." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 28 (2010) ("*HLP*"); *see id.* at 27–28 (statutory ban on "services" to designated foreign terrorist organizations functioned as content-based restriction on speech). Specifically, Plaintiffs wish to provide the OTP with evidence, information, and expert analysis that will help the OTP investigate and prosecute atrocity crimes. Decl. of Matthew Smith ¶¶ 10–13, ECF No. 19-1 ("Smith Decl."); Decl. of Akila Radhakrishnan ¶¶ 15–16, ECF No. 19-2 ("Radhakrishnan Decl."). Communicating these desired messages is what would put Plaintiffs in the Order's crosshairs: since their speech would assist the OTP, the Order forces them to suppress it, lest they face harsh penalties for providing a service "to, or for the benefit of," the Prosecutor. Order § 3(a). Thus, the Order's application to Plaintiffs' "particular message" is subject to the "more rigorous" standard of strict scrutiny. *HLP*, 561 U.S. at 27–28 (citing *Cohen v. California*, 403 U.S. 15, 18–19 (1971)).

Second, Defendants are wrong that the Order is "content neutral." Opp. 12. The Order prohibits speech that has the "function or purpose" of rendering a service to or for the benefit of

the Prosecutor. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). As the Supreme Court has made clear, when a government regulation targets speech because of its "function or purpose," the regulation draws a "facial distinction[] based on a message" and is "subject to strict scrutiny."[2] *Id.* at 163–64; *see also Open Soc'y Just. Initiative v. Trump*, 510 F. Supp. 3d 198, 211 (S.D.N.Y. 2021) ("*OSJI*") (holding sanctions imposed under a precursor executive order placed a "content-based restriction" on speech because "speech [was] restricted if, and only if, it ha[d] the function or purpose of benefitting" the ICC Prosecutor or Deputy Prosecutor).

If any doubt remained as to the appropriate level of scrutiny, the Supreme Court's opinion in *HLP* would lay it to rest. There, the Supreme Court rejected an argument for intermediate scrutiny remarkably akin to the one Defendants now advance. At issue in *HLP* was 18 U.S.C. § 2339B, which bans providing a "service" to a designated Foreign Terrorist Organization (FTO). The plaintiffs in *HLP* were a group of humanitarian organizations and legal experts that wished to support the lawful, nonviolent activities of two FTOs; they claimed that § 2339B violated their First Amendment rights because it prohibited them from providing those services "in the form of speech." 561 U.S. at 20. The Supreme Court held that—as applied to the plaintiffs—§ 2339B's ban on "service[s]" imposed a content-based restriction on speech. *Id.* at 27–28. The Court reached this holding because, under the statute, whether the plaintiffs' speech constituted a prohibited service "depend[ed] on what they sa[id]." *Id.* at 27.

The same is true of the Order's ban on providing "services" to the Prosecutor: the content of Plaintiffs' intended speech is what puts them at risk of punishment. *See* Smith Decl. ¶¶ 10–13; Radhakrishnan Decl. ¶¶ 15–16. Accordingly, strict scrutiny applies. *See Al Haramain Islamic*

---

[2] Defendants assert that the Order was not adopted "because of a disagreement with a certain message." Opp. 12. That is beside the point. "Innocent motives do not eliminate the danger of censorship presented by a facially content-based [restriction]." *Reed*, 576 U.S. at 167.

*Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 997 (9th Cir. 2012) (citing *HLP* and holding that an executive order banning the provision of "services" to designated "terrorist" organizations was subject to strict scrutiny because it placed a content-based ban on speech).

### B. The Order's speech restriction fails strict scrutiny.

Because the Order's speech restriction is subject to strict scrutiny, Defendants must prove that it is "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. Even assuming that the government's asserted interest in sanctioning the Prosecutor is compelling, prohibiting Plaintiffs' speech to the OTP is not narrowly tailored to serve that interest—as Defendants' own brief confirms.

To satisfy the narrow-tailoring prong of strict scrutiny, Defendants must establish that banning Plaintiffs' speech to the OTP is "the least restrictive available means" of achieving their asserted interest. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 823 (2000); *accord McCullen v. Coakley*, 573 U.S. 464, 478 (2014). Far from carrying this burden, Defendants' position on narrow tailoring boils down to an *ipse dixit*. According to Defendants, the government has sanctioned the Prosecutor "to deter him from continuing to attempt to exercise jurisdiction over the personnel of the United States and its allies without consent." Opp. 14–15. "Thus," Defendants say, "barring Plaintiffs from transacting with [the Prosecutor], including by providing him with funds, goods, or services of any kind—including outside of his work at the ICC—is narrowly tailored to the government interest served by the [Order]." *Id.* at 15.

That conclusory assertion is simply incorrect. Defendants do not even *attempt* to explain how the government's asserted interest in deterrence requires it to prohibit Plaintiffs—or any Americans—from providing the Prosecutor with evidence, research, reports, or analysis related to *any* investigation or prosecution, including those the United States continues to support. *See* Opp. 14. Nor do Defendants attempt to explain why the panoply of non-speech restrictions imposed by

4

the Order, standing alone, are an "ineffective" means of pursuing the government's asserted interest in deterrence. *Playboy*, 529 U.S. at 816; *Reno v. ACLU*, 521 U.S. 844, 874 (1997) (when strict scrutiny applies, regulation of speech "is unacceptable if less restrictive alternatives would be at least as effective in achieving the" government's asserted purpose); *see* Order §§ 1, 4 (imposing non-speech measures).

Instead, Defendants urge the Court to accept without question their assertion that the Order's speech restriction is narrowly tailored. Opp. 15. As Defendants put it, "[w]here the political branches have concluded that particular restrictions are necessary to achieve foreign policy and national security goals, the First Amendment does not require courts to reject that 'considered judgment.'" *Id.* (quoting *HLP*, 561 U.S. at 36). But the Supreme Court instructs that "concerns of national security and foreign relations do not warrant abdication of the judicial role," and the judiciary "do[es] not defer to the Government's reading of the First Amendment, even when such interests are at stake." *HLP*, 561 U.S. at 34. Indeed, courts regularly scrutinize, and find wanting, the government's asserted foreign-policy and national-security justifications for restricting speech. *E.g.*, *Al Haramain*, 686 F.3d at 1000; *OSJI*, 510 F. Supp. 3d at 217; *cf. Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017) ("[N]ational-security concerns must not become a talisman used to ward off inconvenient claims.").

What is more, Defendants offer no indication that the Order's broad speech restriction is the product of any branch's considered judgment. *HLP*, on which Defendants rely (Opp. 15), provides an instructive contrast. There, the record included both a sworn declaration by an official of the executive branch and statutorily-enacted congressional findings. 561 U.S. at 36. Based on this record, the Court concluded that the "the political branches ha[d] adequately substantiated" their "determination" that prohibiting the plaintiffs from providing FTOs with material support in

5

the form of speech—even material support directed solely to the FTOs' nonviolent, humanitarian activities—was "necessary" "to serve the Government's interest in preventing terrorism." *Id.* There is not, and could not be, a comparable record here. On the contrary, both Congress and the executive have repeatedly supported cooperation with the ICC's investigation and prosecution of atrocity crimes committed by a variety of actors, even while the United States has objected to *some* exercises of the ICC's jurisdiction. *See, e.g.*, 22 U.S.C. § 7433(a) (expressly permitting the United States to assist the ICC's investigation of the Situation in Ukraine); Remarks, Beth Van Schaack, Amb.-at-Large for Glob. Crim. Just., Statement of the United States at the 22nd Session of the Assembly of States Parties of the International Criminal Court (Dec. 8, 2023), https://perma.cc/Z9W5-ULYQ (stating that the United States is "providing practical assistance to the OTP across a range of its investigations. We are helping the [ICC] track fugitives across several situations, including through offering rewards for their arrest.").

Simply put, Defendants' mere assertion that the Order's speech restriction is narrowly tailored is neither accurate nor a considered judgment of the political branches, and it is not entitled to the Court's deference.

### C. The Order's speech restriction fails intermediate scrutiny.

Even if the Order's speech restriction were subject to intermediate scrutiny, it would not survive. Under intermediate scrutiny, the government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Rideout v. Gardner*, 838 F.3d 65, 72 (1st Cir. 2016) (cleaned up). That is precisely what the Order does: it prohibits speech, including Plaintiffs', with no apparent connection to Defendants' stated interest. Put differently, the Order's speech restriction is a "[b]road prophylactic prohibition[] that fail[s] to respond precisely to the substantive problem" Defendants have identified. *Id.* (cleaned

6

up). Consequently, it "cannot withstand" *any* form of heightened First Amendment scrutiny—intermediate included. *Id.*; *OSJI*, 510 F. Supp. 3d at 212 n.7.

**II.      Plaintiffs are likely to succeed on the merits of their non-statutory *ultra vires* claim.**

Defendants agree, as they must, that IEEPA does not permit the executive "to regulate or prohibit, directly or indirectly," the import or export of "information or informational materials," "regardless of format or medium of transmission." 50 U.S.C. § 1702(b)(3). By plain language and express Congressional intent, this provision—known as the "Berman Amendment"—protects Plaintiffs' intended speech to the OTP. *See* Mot. 15–17. OFAC, however, has taken a more restrictive view.[3] According to at least 14 OFAC regulations implementing IEEPA sanctions programs, the Berman Amendment does not extend to "information or informational materials not fully created and in existence at the date of the transactions." *E.g.*, 31 C.F.R. § 560.210(c)(2).[4] And as Defendants elsewhere assert, this interpretation "distinguishes between informational materials that are widely circulated in a standardized format and those that are bespoke." Defs.' Mem. of L. in Opp. to Pls.' Mot. for Prelim. Inj. 21, *Rona v. Trump*, No. 25-cv-3114 (S.D.N.Y. May 13, 2025), ECF No. 56 (internal quotation marks omitted).

OFAC's interpretation of the Berman Amendment is wrong, *see* Mot. 15–17, and Defendants do not argue otherwise. Indeed, Defendants' brief all but concedes that Plaintiffs' intended speech to the OTP consists of "information or informational materials" within the meaning of 50 U.S.C. § 1702(b)(3). *See* Opp. 19 ("Plaintiffs' as-applied challenge thus fails because the EO cannot, by statute, prohibit the transmission of 'information and informational

---

[3] OFAC, the Treasury Department's Office of Foreign Assets Control, administers and enforces IEEPA sanctions programs.

[4] *See also* 31 C.F.R. §§ 582.205(b)(2), 569.205(b)(2), 547.206(c)(2), 549.206(b)(2), 548.206(b)(2), 579.205(b)(2), 544.206(b)(2), 576.209(b)(2), 536.205(b)(2), 510.213(c)(2), 542.211(c)(2), 539.204(b)(2), 515.206(a)(2).

7

materials.'"). But this near-concession is cold comfort to Plaintiffs and others like them, because it ignores (or elides) OFAC's insistence that it may, in fact, restrict speech like Plaintiffs'. *Cf.* Defs.' Mem. of L. in Opp. to Pls.' Mot. for Prelim. Inj. 21, *Rona*, No. 25-cv-3114 (defending OFAC's longstanding interpretation of the Berman Amendment). Thus, while Defendants' Opposition seems to accept that the Berman Amendment applies to Plaintiffs' intended speech, the Order's chilling effect will persist absent judicial relief.

Contrary to Defendants' argument (Opp. 17), Plaintiffs may seek such relief even if IEEPA lacks a private right of action. Equitable, or "non-statutory," review of executive action is available to plaintiffs to vindicate a right that is "constitutional in scope," provided that other venues for review are unavailable and Congress did not "clearly intend" to preclude review of the action in question. *See Puerto Rico v. United States*, 490 F.3d 50, 59 (1st Cir. 2007); *see also Chamber of Com. v. Reich,* 74 F.3d 1322, 1328 (D.C. Cir. 1996) (permitting plaintiffs to pursue *ultra vires* challenge to executive order when absence of agency regulations precluded Administrative Procedure Act ("APA") review). Those conditions are satisfied here. First, the question of whether, and to what extent, Congress prohibited the executive from regulating Plaintiffs' speech in 50 U.S.C. § 1702(b) is plainly "constitutional in scope." *Puerto Rico*, 490 F.3d at 59. Second, because OFAC has not yet promulgated regulations implementing the Order, review under the APA is unavailable. *See* 5 U.S.C. § 704 (APA review extends to "final agency action"). And third, no portion of the Berman Amendment indicates that Congress "clearly intend[ed]" to preclude judicial review.[5] *Puerto Rico*, 490 F.3d at 59. Accordingly, Plaintiffs may sue to vindicate their rights under

---

[5] In a footnote, Defendants point to 50 U.S.C. § 1702(c), which states that "this subsection does not confer or imply any right to judicial review." Opp. 18 n.7. But subsection (c) of § 1702 is not part of the Berman Amendment; it is specific to the judiciary's *in camera*, *ex parte* review of classified materials, and it clarifies that courts' authority to conduct that review does not establish a general statutory cause of action.

8

the Berman Amendment pursuant to a non-statutory *ultra vires* claim—consistent with the conclusions of multiple other federal courts. *OSJI*, 510 F. Supp. 3d at 214; *see also Marland v. Trump*, 498 F. Supp. 3d 624, 636 n.4 (E.D. Pa. 2020) (stating that even if agency's exercise of IEEPA authority were unreviewable under the APA, plaintiffs could seek to enforce the Berman Amendment via a non-statutory cause of action).[6]

### III. Plaintiffs satisfy the remaining requirements for preliminary relief.

Defendants' Opposition pays lip service to the First Amendment while evading the key question: whether Plaintiffs' speech is constitutionally protected or otherwise exempt from the Order's ban on "services." This only underscores the substantial risk Plaintiffs will face by resuming their speech to the OTP, rendering it all the more clear that Plaintiffs "have made out a plausible claim of a 'chilling effect' on the exercise of their rights of expression." *Maceira v. Pagan*, 649 F.2d 8, 18 (1st Cir. 1981). Nothing more is required to establish irreparable harm. *Id.* And if the Order's chilling effect on Plaintiffs were not enough (it is), "irreparable injury is presumed" when, as here, parties seeking a preliminary injunction "are likely to prevail on their First Amendment claim." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 11 (1st Cir. 2012).

Defendants assert that granting Plaintiffs' motion for a preliminary injunction "would frustrate and displace the President's determination of how best to address threats to national security." Opp. 19. That assertion does not suffice to tip the balance of equities or public interest in Defendants' favor. As this Court has explained, "[t]he public interest is served by protecting

---

[6] Defendants assert that Plaintiffs "cannot obtain relief against the President for his actions in connection with the" Order. Opp. 18. This assertion is too broad: Plaintiffs may obtain declaratory relief against the President. *See Clinton v. City of New York*, 524 U.S. 417, 425 n.9, 449 (1998); *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 609, 616 (D.C. Cir. 1974). For the avoidance of doubt, Plaintiffs do not seek injunctive relief against the President.

9

First Amendment rights from likely unconstitutional infringement." *Comcast of Me./N.H., Inc. v. Mills*, 435 F.Supp.3d 228, 250 (D. Me. 2019), *aff'd*, 988 F.3d 607 (1st Cir. 2021); *see also Perkins Coie LLP v. U.S. Dep't of Just.*, No. 25-cv-716, 2025 WL 1276857, at *22 (D.D.C. May 2, 2025) (noting that, "like every other governmental power," the President's authority to address purported threats to national security "must be exercised in subordination to the applicable provisions of the Constitution") (quoting *Dames & Moore v. Regan*, 453 U.S. 654, 661 (1981)). By the same token, "the government cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required." *TikTok Inc. v. Trump*, 490 F. Supp. 3d 73, 85 (D.D.C. 2020) (cleaned up); *see also OSJI*, 510 F. Supp. 3d at 217 (holding that "proffered national security justification for seeking to prevent and potentially punish Plaintiffs' speech [was] inadequate to overcome Plaintiffs' and the public's interest in the protection of First Amendment rights").

## CONCLUSION

The Court should grant Plaintiffs' motion for a preliminary injunction.

| | |
|---|---|
| May 30, 2025 | Respectfully submitted, |

*/s/ Carol J. Garvan*  
Carol J. Garvan  
AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION  
PO Box 7860  
Portland, Maine 04112  
(207) 619-8687  
cgarvan@aclumaine.org  

*/s/ Zachary Heiden*  
Zachary Heiden  
AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION  
PO Box 7860  
Portland, Maine 04112  
(207) 619-6224  
zheiden@aclumaine.org  

*/s/ Anahita D. Sotoohi*  
Anahita D. Sotoohi  
AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION  
PO Box 7860  
Portland, Maine 04112  
(207) 613-4350  
asotoohi@aclumaine.org  

*/s/ Charles Hogle*  
Charles Hogle*  
AMERICAN CIVIL LIBERTIES UNION FOUNDATION  
125 Broad Street, 18th Floor  
New York, New York 10004  
(212) 549-2660  
charlie.hogle@aclu.org  

*/s/ Ashley Gorski*  
Ashley Gorski*  
AMERICAN CIVIL LIBERTIES UNION FOUNDATION  
125 Broad Street, 18th Floor  
New York, New York 10004  
(212) 549-2660  
agorski@aclu.org  

*/s/ Hina Shamsi*  
Hina Shamsi*  
AMERICAN CIVIL LIBERTIES UNION FOUNDATION  
125 Broad Street, 18th Floor  
New York, New York 10004  
(212) 549-2660  
hshamsi@aclu.org  

ATTORNEYS FOR PLAINTIFFS  
*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

      I hereby certify that on the date below, I electronically filed the foregoing document via the Court's CM/ECF system.

Dated: May 30, 2025

*/s/ Charles Hogle*
Charles Hogle
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2660
charlie.hogle@aclu.org
Admitted *pro hac vice*