UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

MATTHEW SMITH and
AKILA RADHAKRISHNAN,

   *Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

   *Defendants*.

No.: 1:25-cv-00158

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................**Error! Bookmark not defined.**

ARGUMENT......................................................................**Error! Bookmark not defined.**

I.     This Court lacks subject matter jurisdiction because Plaintiffs do not have standing...**Error! Bookmark not defined.**

II.     Plaintiffs' claims are unripe. ........................................................................................5

III.     Plaintiffs do not state claims for relief..........................................................................7

CONCLUSION ................................................................................................................................8

## TABLE OF AUTHORITIES

**Cases**

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .................................................................................................. 4, 5

*Ernst & Young v. Depositors Econ. Prot. Corp.*,
  45 F.3d 530 (1st Cir.1995) ............................................................................................ 6

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) .......................................................................................................... 3

*Mahmoud v. Taylor*,
  606 U.S. 522 (2025) ...................................................................................................... 5

*N.H. Lottery Comm'n v. Rosen*,
  986 F.3d 38 (1st Cir. 2021) ........................................................................................... 6

*Open Soc'y Just. Initiative v. Trump*,
  510 F. Supp. 3d 198 (S.D.N.Y. 2021) ............................................................................ 8

*R.I. Ass'n of Realtors, Inc. v. Whitehouse*,
  199 F.3d 26 (1st Cir. 1999) ................................................................................... 1, 6, 7

*Reddy v. Foster*,
  845 F.3d 493 (1st Cir. 2017) ......................................................................................... 5

*Rona v. Trump*,
  797 F. Supp. 3d 278 (S.D.N.Y. 2025) ............................................................................ 8

*SEC v. Tambone*,
  597 F.3d 436 (1st Cir. 2010) ......................................................................................... 1

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ...................................................................................................... 4

*Trump v. AFGE*,
  145 S. Ct. 2635 (2025) .................................................................................................. 3

**Statutes**

50 U.S.C. § 1702(b) ............................................................................................................ 1, 7

50 U.S.C. § 1702(b)(3) ........................................................................................................... 7

**Regulations**

31 C.F.R. § 528.205(a) .................................................................................................. 1, 3, 7

International Criminal Court-Related Sanctions Regulations, 90 Fed. Reg. 28012-01 (July 1, 2025) ..... 1

Executive Order 14,203, 90 Fed. Reg. 9369 (Feb. 6, 2025) ....................................... 1, 3, 7

## **INTRODUCTION**

Plaintiffs lack standing and their claims are not ripe; the complaint thus should be dismissed. Controlling authorities have long held that standing requires an "objectively reasonable" fear of prosecution. *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972); *see also Rhode Island Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 31 (1st Cir. 1999). Plaintiffs cannot show that. Their lengthy hypothetical arguments do not change the fact that their allegations are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture[.]" *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (citation omitted). Ripeness requires a party to have concrete plans to engage immediately (or nearly so) in an arguably proscribed activity. *Id.* at 33 (citations omitted). But Plaintiffs fail to make that showing, too.

Plaintiffs' purported standing rests entirely on the assumption that they face a credible threat of prosecution. Yet, the "compelling contrary evidence" is that they, in fact, do not do so. *See id.* Executive Order 14,203 ("the EO"), 90 Fed. Reg. 9369 (Feb. 6, 2025), and its implementing regulations, International Criminal Court-Related Sanctions Regulations, 90 Fed. Reg. 28012-01 (July 1, 2025) (31 C.F.R., pt. 528) ("the Regulations"), provide that each is to be "implemented consistent with applicable law," 90 Fed. Reg. at 28021 (Exec. Ord. 14,203, § 12), as well as the explicit statutory provision exempting "information [and] informational materials." 50 U.S.C. § 1702(b) ("the Berman Amendment"); 31 C.F.R. § 528.205(a). Furthermore, guidance issued by the agency charged with enforcing the EO and the Regulations provides that Plaintiffs will not be subject to enforcement for First Amendment protected activities. *See Basic Information on OFAC and Sanctions*, Off. of Foreign Assets Control (OFAC) (Aug. 27, 2024), https://ofac.treasury.gov/faqs/1190 ("OFAC FAQ 1190"). This Court's lack of jurisdiction follows from Plaintiffs' inaction. Without meaningful burden, Plaintiffs could seek interpretive guidance or authorization from OFAC, which could either resolve this dispute or potentially concretize their claims

1

and support standing. But Plaintiffs have done no such thing. Consequently, their claims should be dismissed.

**ARGUMENT**

**I.   This Court lacks subject matter jurisdiction because Plaintiffs do not have standing.**

Plaintiffs fail to establish standing because they have not demonstrated that their activities will be unconstitutionally restricted (or restricted at all). Recent Supreme Court jurisprudence that the restrictions on the provision of "services" to blocked persons in the EO and Regulations, when read together with statutory exclusions for "information and informational materials" within IEEPA (*i.e.*, the Berman Amendment) and existing agency guidance, strongly suggests that Plaintiffs cannot plausibly allege pre-enforcement standing.

On July 8, 2025, the Supreme Court granted the government's application for a stay of a district court's preliminary injunction in *Trump, et al. v. Am. Fed'n of Gov't Emp., et al.*, No. 24A1174, a broad challenge to an Executive Order directing reduction-in-force ("RIF") actions. In relevant part, the Court explained that "the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful[.]" *Trump v. Am. Fed'n of Gov't Emp.,* 606 U.S.---, 145 S. Ct. 2635, 2635 (2025) (mem.). Concurring in the grant of stay, Justice Sotomayor explained that the challenged Executive Order "directs agencies to plan [RIFs] 'consistent with applicable law,' . . . and the resulting joint memorandum from [OMB and OPM] reiterates as much." *Id.* (Sotomayor, J., concurring). So too here. The EO and Regulations both provide that each authority is to be implemented "consistent with applicable law[,]" which includes the Berman Amendment. Exec. Ord. 14,203, § 12(b); 31 C.F.R. § 528.205(a). Accordingly, the EO and Regulations are entitled to a presumption of lawfulness where those authorities direct that they are to be implemented consistent with applicable law. Here, there is no denial of a specific license by OFAC, no OFAC warning that Plaintiffs' will be subject to enforcement, nor any actual enforcement action before this court. Therefore, this Court "has no occasion to consider whether [the EO and

2

Regulations] will be carried out consistent with the constraints of law." *See Trump*, 145 S. Ct. at 2635 (Sotomayor, J., concurring).

Plaintiffs cite *Holder v. Humanitarian Law Project,* 561 U.S. 1 (2010), in support of standing, but *Holder* is a material-support-to-foreign-terrorist-organizations case, not an IEEPA sanctions case, and is distinguishable. *See* Pls.' Mem. of L. in Opp'n to Def. Mot. to Dismiss (Pl. Resp.) at 8-9, ECF No. 36. In *Holder*, the Supreme Court concluded that plaintiffs had established pre-enforcement standing to challenge the material-support statute because they "face[d] 'a credible threat of prosecution' and 'should not be required to await and undergo a criminal prosecution as the *sole means* of seeking relief.'" *Holder*, 561 U.S. at 15 (citation omitted) (emphasis added). But *Holder* dealt with prospective enforcement of the material support provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which does not have an informational materials exclusion akin to that of IEEPA's Berman Amendment. Nor was there agency guidance indicating that the *Holder* plaintiffs would not be subject to enforcement for First Amendment protected activities.

Simply put, *Holder* is not this case. Here, Plaintiffs fail to plead *any* facts establishing *any* credible threat of prosecution. Instead, they pronounce the EO and Regulations facially unconstitutional, cite nonbinding (and arguably poorly reasoned) opinions of other courts that OFAC "ha[s] long adhered to an unduly narrow interpretation of the Berman Amendment", *see* Pl. Resp. at 10, and ignore additional and directly relevant OFAC guidance. *See* OFAC FAQ 1190. In truth, Plaintiffs have other, readily available means by which to potentially continue the activities from which they have allegedly abstained. Plaintiffs may either seek interpretive guidance or a license from OFAC.[1] Such an approach would allow Plaintiffs to more efficiently pursue their claims, if any. *See Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 416

---

[1] Defendants note that Plaintiffs' arguments fail to distinguish – or even acknowledge the distinction – between any of their activities which could be viewed as pure independent speech (and are therefore not prohibited) and any of their activities that could be considered services that primarily provide a benefit to a sanctioned person.

3

(2013) (holding that the Second Circuit's analysis allowing a party to establish standing based upon a fear of future harm "so long as that fear is not 'fanciful, paranoid, or otherwise unreasonable'" was too permissive (citation omitted)).

To be clear, Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves"—*i.e.,* abstaining from speech—"based on their fears of hypothetical future harm that is not certainly impending." *Id.* The controlling authorities hold that "an allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus ("SBA List"),* 573 U.S. 149, 158 (2014) (citing *Clapper*, 568 U.S. at 414 n.5); *see Mahmoud v. Taylor,* 606 U.S. 522, 560 (2025). *Clapper* explains the distinction it makes between the "certainly impending" and "substantial risk" standards.

> Our cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In *some* instances, we have found standing based on a "substantial risk" that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm.

*Clapper*, 568 U.S. at 414 n. 5 (emphasis added); *see also Reddy v. Foster,* 845 F.3d 493, 500 (1st Cir. 2017) ("Because *SBA List* both postdated and cited *Clapper*, we follow its disjunctive framing of the test: injury is imminent if it is certainly impending or if there is a substantial risk that harm will occur."). Here, Plaintiffs cannot plausibly allege either that enforcement is certainly impending or is there a substantial risk of it occurring. Therefore, they lack standing. Their choice to avoid seeking interpretive guidance or a specific license should not force this Court disregard the weight of controlling authority to decide whether the EO and Regulations are facially unconstitutional.

*Reddy* is analogous. The plaintiffs alleged both fear of government penalties for certain expressive activities and fear of enforcement. *See Reddy*, 845 F.3d at 503. They offered a subjective assessment that their activities ("prayer, leafleting, sidewalk counseling, pro-life advocacy, and other peaceful expressive activities") placed them within the bounds of the government's enforcement authority, but the court

4

ruled that speculation that the government may in the future take some action was insufficient to establish standing. *Id.* ("[A] plaintiff's conjectural fear that a government actor 'might in the future take some other and additional action detrimental to' her does not suffice to create standing. Speculation of that sort amounts to 'a subjective chill'—which, in the Article III standing context, is 'not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" (citations omitted)). So too here. Plaintiffs attempt to establish standing by alleging their activities are plainly within the sweep of some hypothetical government enforcement action. Compl. ¶ 78-9. But there exist potentially applicable statutory exemptions for their alleged activities (*i.e.*, the Berman Amendment) and agency guidance indicating that protected expressive activities will not be subject to enforcement (*i.e.*, OFAC FAQ 1190). At best, their assessment is purely speculative. Article III requires more than this, especially given the fact that Plaintiffs could potentially concretize their injury simply by asking OFAC for interpretive guidance or a license.

## II.   Plaintiffs' claims are unripe.

The complaint should also be dismissed because Plaintiffs' claims are unripe. Ripeness requires Plaintiffs demonstrate the "fitness" of their issues their claims present for resolution and that they have sustained "hardship." *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 53-54 (1st Cir. 2021) (citing *Reddy*). "In the pre-enforcement context, a party's 'concrete plans to engage immediately (or nearly so) in an arguably proscribed activity' gives a 'precise shape to disobedience' and provides a 'specific legal question fit for judicial review,' and a showing that a 'challenged statute, fairly read, thwarts' those plans can demonstrate hardship." *Id.* at 53 (citing *R.I. Ass'n of Realtors, Inc.*, 199 F.3d at 33). The fitness inquiry "typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." *R.I. Ass'n of Realtors, Inc.*, 199 F.3d at 33 (quotation omitted).

As to fitness, Plaintiffs have not established that their activities will violate the EO and Regulations. Plaintiffs' ripeness argument turns on their allegation that they have a "reasonable fear of enforcement." Pl. Resp. at 12. Plaintiffs base this "reasonable fear" on their subjective reading of the EO and Regulations, their legal conclusion that their activities would violate both, and their disregard for standard regulatory guidance and licensing procedures. *Id.* They further allege that Defendants regularly enforce IEEPA violations and have not disclaimed any intent to do so in this case. *Id.* In support of their argument that they plausibly allege a violation of IEEPA (and the First Amendment), Plaintiffs cite the text of the relevant authorities, challenge OFAC's interpretation of the Berman Amendment, and assert that "Defendants regularly seek to enforce IEEPA violations." Pl. Resp. at 12. These assertions do not impart Plaintiffs' claims with sufficient finality or definiteness for the issues to be considered ripe. Consistent with Supreme Court's direction in *Trump v. AFGE*, this Court should not opine on an executive order that directs implementation consistent with applicable law before it has been applied. Next, the hardship inquiry "typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties." *R.I. Ass'n of Realtors, Inc.,* 199 F.3d at 33. Plaintiffs have not shown that the challenged EO, fairly read, does so. The EO and Regulations direct implementation in accordance with the law. Further, OFAC FAQ 1190 facially contradicts Plaintiffs' enforcement claims with respect to activity within the scope of the Berman Amendment or protected by the First Amendment. These authorities render Plaintiffs' allegation that the EO and Regulations are, on their faces, violative of the First Amendment or IEEPA fatally premature.

### III.     Plaintiffs do not state claims for relief.

IEEPA's Berman Amendment "states that the executive's authority to impose sanctions 'does not include the authority to regulate or prohibit, directly or indirectly,' the import or export of 'information or informational materials,' 'regardless of format or medium of transmission.'" Pl. Resp. at

19 (citing 50 U.S.C. § 1702(b)(3)). OFAC cites this statutory provision in OFAC FAQ 1190, which further clarifies that "OFAC does not sanction persons for their engagement in activities subject to U.S. constitutional protection, such as protected speech . . . nor do U.S. persons violate OFAC sanctions for engaging in such constitutionally protected activity." OFAC FAQ 1190. Moreover, the EO states that it shall be "implemented consistent with applicable law", Exec. Order 14,203, § 12(b), and the Regulations affirm compliance with the Berman Amendment by expressly immunizing "any transactions that are exempt pursuant to section 203(b) of the International Emergency Economic Powers Act (50 U.S.C. 1702(b))." 31 C.F.R. § 528.205(a). Without further government action indicating that the EO and Regulations will be enforced in an unconstitutional manner, Plaintiffs fail to establish their claim that their First Amendment rights have or will be infringed.

Neither of the judicial decisions that Plaintiffs cite challenging this EO and these Regulations, or similar restrictions issued in 2020, involve an actual enforcement action by Defendants. *See Open Soc'y Just. Initiative v. Trump,* 510 F. Supp. 3d 198, 215-16 (S.D.N.Y. 2021) ("[A]t present, it is no more than speculation that OFAC intends to violate that provision in its enforcement of the Executive Order. [The government] acknowledges[s] that IEEPA's language is 'clear' and that the Executive Order 'shall be implemented consistent with applicable law.'" (citation omitted)); *Rona v. Trump,* 797 F. Supp. 3d 278, 285 (S.D.N.Y. 2025) ("Rona and Davis allege that they have been injured, and continue to be injured, by the threat of enforcement of IEEPA's civil and criminal penalties for providing services to or for the benefit of [the Prosecutor]." (quotations omitted)). These cases provide no support for the contention that Plaintiffs' First Amendment rights have actually been or will actually be unlawfully infringed. For these reasons, and those explained in Defendant's Motion to Dismiss, Plaintiffs' fail to provide anything more than conclusory legal allegations and both their First Amendment and APA claims must be dismissed.

7

## **CONCLUSION**

The Court should grant Defendants' motion to dismiss each of Plaintiffs' claims.

Dated: December 31, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ALEXANDER HAAS
Director, Federal Programs Branch

STEPHEN M. ELLIOTT
Assistant Director, Federal Programs Branch

*/s/ Ryan M. Underwood*
RYAN M. UNDERWOOD
Trial Attorney (D.C. Bar No. 1656505)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-1952
E-mail: ryan.m.underwood2@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

     I hereby certify that on December 31, 2025, I caused the foregoing to be electronically filed with Clerk of Court using the CM/ECF system, which sent such notice to any individuals and entities who have entered appearances in this case to date, pursuant to the Court's ECF system.

                                                   /s/ *Ryan M. Underwood*
                                                   Ryan Underwood
                                                   Trial Attorney (D.C. Bar No. 1656505)
                                                   United States Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   1100 L Street, NW
                                                   Washington, DC 20005
                                                   Tel: (202) 305-1952
                                                   E-mail: ryan.m.underwood2@usdoj.gov